IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**UNITED STATES OF AMERICA**,

                Plaintiff,

    v.

**LORENZO LARON JONES**,

                Defendant.

                                    No. 3:07-cr-00168-MO
                                    No. 3:13-cv-00885-MO

                                    OPINION AND ORDER

**MOSMAN, J.**,

A jury found Lorenzo Laron Jones guilty of a single count of possessing a firearm while a felon. (Ind. [1] at 1–2; Verdict [97] at 1.) Based on four prior convictions in Oregon state court, two of which were premised on the offense of unlawful use of a weapon, I found that Mr. Jones is an armed career criminal as the term is defined in the Armed Career Criminal Act of 1984, Pub. L. 98-473, 98 Stat. 1837 (1984) (codified as amended at, *e.g.*, 18 U.S.C. § 924(e)) (the "ACCA"). Accordingly, I sentenced him to 262 months' imprisonment.

Now, Mr. Jones moves [158] to amend his sentence under 28 U.S.C. § 2255, contending that unlawful use of a weapon does not qualify as a predicate felony under the ACCA. (Mem. in Supp. [165] at 3.) He also seeks leave to amend his § 2255 motion [174] to allege that trial counsel rendered ineffective assistance in failing to notice that Mr. Jones could have had one of his prior Oregon convictions vacated pursuant to a plea agreement. The Government responded

to both motions [167, 179].  Mr. Jones replied [180, 181].  I DENY both motions.

## BACKGROUND

Between 1991 and 1999, Mr. Jones sustained at least four felony convictions in Oregon state courts.  (Ind. [1] at 1–2; Not. of Sent. Enhancement [3] at 1–2.)  Two of the convictions, both in 1994, were for violations of Oregon's statute proscribing unlawful use of a weapon. (Ind. [1] at 1.)  During the guilty plea colloquy for the later conviction, sustained on November 7, 1994, Mr. Jones admitted that he had fired a "nine millimeter" at a trailer in which "some people" were having a party.  (Mem in Supp. [175-1] Att. 1 at 10:6–22.)  The plea agreement provided that the court would vacate the conviction if it were ever to supply the basis of a federal prosecution.  *Id.* at 3:16–23, 7:1–10.

On April 25, 2007, a grand jury issued an indictment charging Mr. Jones with one count of possessing a firearm while a felon, in violation of 18 U.S.C. § 922(g)(1).  (Indictment [1] at 1–2.)  The Government notified Mr. Jones of its intent to pursue an enhancement under the ACCA based on four Oregon state felony convictions, including his two convictions of unlawful use of a weapon.  (Not. of Sent. Enhancement [3] at 1–2.)  After a four-day jury trial [91, 94, 95, 98], the jury returned a verdict of guilty [97].

The presentence report recommended that Mr. Jones be held an armed career criminal based on the four felonies listed in the Government's notice, for an offense level of 34.  (Present. Report ¶¶ 18–20.)  Concluding that Mr. Jones's criminal history points totaled seventeen, the report recommended a criminal history category of VI.  *Id.* ¶ 41.  Sentencing [114] took place on May 13, 2008.  Because I found that Mr. Jones did not possess a firearm in connection with a crime of violence, I determined that 33, not 34, was the correct offense level.  (Resp. [167-2] Att. 3 at 89:20–90:13.)  Based on a criminal history category of VI, I sentenced Mr. Jones to a term

of imprisonment of 262 months. (Resp. [167-2] Att. 3 at 91:1–3, 95:18–20.) The Ninth Circuit affirmed the conviction and sentence on September 2, 2009. (Mem. Op. [132-2] at 1.) Mr. Jones did not challenge my implied finding that his two convictions for unlawful use of a weapon qualified as predicate convictions under the ACCA. *See id.* at 1–7.

Mr. Jones filed a pro se motion under 28 U.S.C. § 2255 on May 28, 2013, arguing that his two convictions for unlawful use of a weapon did not qualify as predicate felonies under the ACCA. (Mot. [133] at 3; Mem. in Supp. [134] at 2.) I appointed counsel [149] to represent him. Counsel filed an amended motion on November 9, 2013, claiming that trial counsel, Steven Wax, rendered ineffective assistance in failing to challenge the use of the two convictions as predicate felonies. (Mot. [158] at 2–3.) During the following March, counsel sought and obtained leave to amend the motion to claim ineffective assistance on appeal as well. (Mot. [163] at 1; Order [166].) Counsel filed a memorandum in support of the amended motion [165] on March 25, 2014. The Government filed a response [167], and Mr. Jones replied [180].

On June 11, 2014, Mr. Jones moved for leave to amend his § 2255 motion a third time. (Mot. [174] at 1–2.) Mr. Jones hopes to assert an ineffective assistance claim based on trial counsel's failure to seek vacation of Mr. Jones's November 1994 convictions according to the terms of the plea bargain. *Id.* at 1. The Government opposes the motion, asserting that amendment would be futile. (Resp. [179] at 5–9.) Mr. Jones replied [181].

## DISCUSSION

To prevail on a claim of ineffective assistance of counsel, Mr. Jones must show (1) that counsel's performance was "deficient" and (2) that the deficient performance "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other." *Rios v. Rocha*, 299 F.3d 796, 805

(9th Cir. 2002).

To satisfy the deficiency prong, Jones must demonstrate that his attorney's actions "were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To satisfy the prejudice prong, Mr. Jones must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

**I.      Failure To Argue at Sentencing and on Appeal That Unlawful Use of a Weapon Is Not a Violent Felony**

Mr. Jones argues that his trial counsel's failure to argue that the Oregon offense of unlawful use of a weapon is not a violent felony amounted to deficient performance that prejudiced him at sentencing. (Mem. in Supp. [165] at 11–13.) Naturally, if this argument lacks merit, than counsel's failure to raise it necessarily was not prejudicial. Because I find that unlawful use of a weapon was a violent felony under the law as it existed when Mr. Jones was sentenced, I conclude that his counsel did not render prejudicially deficient performance in failing to argue otherwise.

**A.      *"Violent Felonies" Under the ACCA***

The ACCA provides for imposition of enhanced sentences on defendants who have sustained prior convictions of certain predicate felonies. One provision imposes a mandatory minimum sentence of fifteen years upon a defendant convicted of violating 18 U.S.C. § 922(g)(1) with prior convictions of three violent felonies, serious drug offenses, or a combination of both. 18 U.S.C. § 924(e)(1). In addition to the statutory mandatory minimum,

the Sentencing Guidelines call for an enhanced offense level for a defendant found to be an

armed career criminal under 18 U.S.C. § 924(e).  U.S. Sentencing Guidelines Manual § 4B1.4(a)

(2013).  Unless the Guidelines otherwise call for a higher number, the offense level is 34 in the

event that the defendant used a firearm in connection with "a crime of violence," and 33

otherwise.  § 4B1.4(b).

> A "violent felony" is a felony that
> (i) has as an element the use, attempted use, or threatened use of physical force
> against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise
> involves conduct that presents a serious potential risk of physical injury to
> another.

18 U.S.C. § 924(e)(2)(B).  An offense may qualify as a "violent felony" in three ways.  *United

States v. Snyder*, --- F. Supp. 2d ----, No. 09-30033, 2014 WL 1099062, at *2 (D. Or. Mar. 11,

2014).  Under clause (i), the "force clause," an offense is a violent felony if it requires the use or

attempted or threatened use of "physical force" upon a person.  *Id.*  Under clause (ii), an offense

whose elements match those of the four listed crimes is a violent felony.  *Id.*  Finally, the

remainder of clause (ii), the "residual clause," sweeps in offenses that do not match the listed

crimes but that pose a serious risk of physical harm.  *Id.*

The ACCA "focuses upon the special danger created when a particular type of

offender—a violent criminal or drug trafficker—possesses a gun."  *Begay v. United States*, 553

U.S. 137, 146 (2008).  The crimes listed in § 924(e)(2)(B)(ii) are those that Congress has judged

to be "characteristic of the armed career criminal" in that they "make[] more likely that an

offender, later possessing a gun, will use that gun deliberately to harm a victim."  *Id.* at 145.  In

light of the ACCA's purpose, the residual clause of subparagraph (B)(ii) sweeps in only those

"crimes that are roughly similar, in kind as well as in degree of risk posed," to the enumerated

crimes. *Id.* at 143.

Courts typically apply the categorical approach in determining whether an offense is a violent felony under the ACCA. *Sykes v. United States*, 131 S. Ct. 2267, 2272 (2011). In other words, courts "look only to the fact of conviction and the statutory definition of the prior offense." *Id.* (quoting *James v. United States*, 550 U.S. 192, 202 (2007)). If the statute defining an offense is divisible, i.e., if it sets forth alternative elements, some of which bring the offense within the definition of "violent felony" and some of which do not, a court may look beyond the offense's elements. *See Taylor v. United States*, 495 U.S. 575, 602 (1990) (remarking that a court may look beyond the elements of a burglary statute that proscribes "entry of an automobile as well as a building" to determine whether it is the same as generic burglary). Under this "modified" categorical approach, the universe of materials that a court may consider "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005).

Courts in the Ninth Circuit conduct a two-part inquiry. First, they determine whether "the conduct encompassed by the elements of the offense, in the ordinary case, must present a serious potential risk of physical injury to another." *United States v. Chandler*, 743 F.3d 648, 650 (9th Cir. 2014) (internal quotation and alteration omitted). In order for a crime to present a serious potential risk "in the ordinary case," the crime need not embrace conduct that creates such a risk in every conceivable circumstance of its commission. *James*, 550 U.S. at 207–08. Instead, the Supreme Court suggests that, in order to fall outside the residual clause, the statute must suggest a "realistic probability" that the state would apply it against conduct that does not pose the requisite risk. *Id.* at 208 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193

(2007)).

Second, courts determine whether the offense is "'roughly similar, in kind as well as in degree of risk posed[,] to those offenses enumerated at the beginning of the residual clause." *Chandler*, 743 F.3d at 650 (internal quotation omitted). The crime is a violent felony if the risk the proscribed conduct poses "is comparable to that posed by its closest analog among the enumerated offenses." *Id.* at 651 (quoting *James*, 550 U.S. at 203). For example, like arson, the offense of fleeing law enforcement in a vehicle "entails release of a destructive force dangerous to others." *Sykes*, 131 S. Ct. at 2273. Similarly, Hawaii's offense of criminal property damage in the first degree, like burglary, "creates a clear possibility of a face-to-face confrontation because the person who is threatened with injury might defend himself or retaliate against the perpetrator." *United States v. Spencer*, 724 F.3d 1133, 1143 (9th Cir. 2013) (internal quotation omitted).

### B.    *Whether Oregon's Offense of Unlawful Use of a Weapon Is a Violent Felony*

In relevant part,

> [a] person commits the crime of unlawful use of a weapon if the person . . . [i]ntentionally discharges a firearm, blowgun, bow and arrow, crossbow or explosive device within the city limits of any city or within residential areas within urban growth boundaries at or in the direction of any person, building, structure or vehicle within the range of the weapon without having legal authority for such discharge.

Or. Rev. Stat. § 166.220(1) & (1)(b). In 2004, the Ninth Circuit held that unlawful discharge of a firearm toward a person, building, or vehicle as defined in section 166.220(1)(b) poses a serious potential risk of physical injury. *United States v. Terry-Crespo*, 356 F.3d 1170, 1177–79 (9th Cir. 2004).[1] The court concluded that discharging a firearm in the direction of a city building

---

[1] Specifically, the Court determined that the offense is a "crime of violence" under the Sentencing Guidelines. *Terry-Crespo*, 356 F.3d at 1177; *see* U.S. Sentencing Guidelines Manual § 4B1.2(a). Courts in the Ninth Circuit

poses a "serious potential risk of physical injury." *Id.* at 1178. It rejected the defendant's

argument that firing at a building falls within the residual clause only if the building is occupied.

*Id.* Because "[u]rban areas are, by definition, more densely populated than rural ones," the court

reasoned that discharging a firearm within city limits necessarily carries a heightened risk of

injury to another. *Id.*

**1.      Step One: Whether Unlawful Use of a Weapon Poses a Serious
Potential Risk of Physical Injury in the Ordinary Case**

Though he acknowledges that discharging a weapon at a building creates a risk of harm

that is "clearly very high" in some circumstances, Mr. Jones argues that the degree of risk varies

so greatly depending on the shooter's surroundings that the crime cannot be said to pose

sufficient risk in the ordinary case to invoke the residual clause. (Mem. in Supp. [165] at 10–

11.) He notes that Oregon statute defines the word "building" to include a "booth, vehicle, boat,

aircraft," or any other "structure adapted for overnight accommodation of persons or for carrying

on business therein." *See* Or. Rev. Stat. § 164.205(1). Firing at a "booth," Mr. Jones observes,

may well pose less risk of harm than firing at a residence. (Mem. in Supp. [165] at 11.) Mr.

Jones also argues that the risk posed will vary depending on the shooter's distance from the

building, the time of day, the material of which the building is composed, and the number and

properties of any windows. *Id.*

Mr. Jones's argument suffers from two fatal shortcomings. First, the definition of

"building" he cites expressly applies only to sections 164.205 through 164.270 of the Oregon

Revised Statutes, not section 166.220. Or. Rev. Stat. § 164.205. Second, though the actual risk

posed by discharging a weapon at a building (or structure or vehicle) will vary depending on the

circumstances, each shot carries a serious potential risk of physical harm. As the Ninth Circuit

---

interpret the terms "violent felony" in 18 U.S.C. § 924(e) and "crime of violence" in the Sentencing Guidelines
identically. *Spencer*, 724 F.3d at 1138; *United States v. Crews*, 621 F.3d 849, 852 n.4 (9th Cir. 2010).

observed in *Terry-Crespo*, the heightened human density of an urban environment ensures that every bullet fired poses an unacceptable potential risk of finding a human target.

      **2.**      **Step Two: Whether Unlawful Use of a Weapon Poses a Risk Similar in Kind to That Posed By an Analogous Enumerated Felony**

Four years after the Ninth Circuit's opinion in *Terry-Crespo*, the Supreme Court refined the scope of the residual clause in *Begay*. The Court held that an offense must not only give rise to the same degree of risk as the generic felonies enumerated in § 924(e)(2)(B)(ii), but also the same kind of risk. *Begay*, 553 U.S. at 143. It then observed that the offense of driving under the influence differs from the enumerated felonies because it does not require proof of "purposeful, violent, and aggressive conduct." *Id.* at 144–145 (internal quotations omitted). Instead, to sustain a conviction, "the offender need not have had any criminal intent at all." *Id.* at 145. Because the offense lacks "violent, aggressive, and purposeful" behavior, a conviction does not indicate the defendant's willingness to engage in purposeful, dangerous conduct in the future, as do the listed felonies. *Id.* at 148.

According to Mr. Jones, *Begay* undermined the Ninth Circuit's reasoning in *Terry-Crespo*. (Mem. in Supp. [165] at 7.) There, the Ninth Circuit concluded that unlawful use of a weapon poses a substantial risk of physical injury without examining whether that risk was similar in kind to that posed by any of the generic felonies listed in § 924(e)(2)(B)(ii). *See Terry-Crespo*, 356 F.3d at 1177–79. In opinions following *Begay*, on the other hand, the Ninth Circuit declined to hold state offenses to be violent felonies where they did not necessarily require "purposeful, violent, and aggressive" conduct. *United States v. Coronado*, 603 F.3d 706, 710 (9th Cir. 2010); *United States v. Christensen*, 559 F.3d 1092, 1095 (9th Cir. 2009). For example, in *Coronado*, the court held that the California offense of discharging a firearm with gross negligence is not a violent felony because it does not require "criminal intent," and

therefore "do[es] not satisfy *Begay*'s requirement of 'purposeful' conduct."  603 F.3d at 710,

712.  Similarly, in *Christensen*, the court concluded that statutory rape in Washington is not a

violent felony because it can be committed through "consensual sexual intercourse," and

therefore lacks a "violent" or "aggressive" character.  559 F.3d at 1095.  On the other hand, in

*United States v. Crews*, 621 F.3d 849 (9th Cir. 2010), the Ninth Circuit concluded that Oregon

second-degree assault "clearly involves 'purposeful, violent, and aggressive conduct'" because

the statute "punishes assaultive conduct when the 'defendant was aware of the assaultive nature

of his conduct.'"  *Id.* at 855 (quoting *State v. Barnes*, 329 Or. 327, 338, 986 P.2d 1160, 1167

(1999)).

Mr. Jones argues that Oregon's offense of unlawful use of a weapon does not necessarily

require purposeful, violent, and aggressive conduct.  (Mem. in Supp. [165] at 11–12.)  Unlike the

second-degree assault offense addressed in *Crews*, he suggests, unlawful use of a weapon does

not require the knowing use of a deadly weapon on another person.  *Id.* at 12.  Accordingly, the

offense does not require conduct of a "purposeful" nature.  *Id.*  In failing to point out to the court

that unlawful use of a weapon is not a violent felony under *Begay*'s "purposeful, violent, and

aggressive" test, Mr. Jones asserts, counsel rendered deficient performance.  *Id.* at 12–13.

The Government takes issue with Mr. Jones's reliance on the phrase "purposeful, violent,

and aggressive" as if it represented elements that must be established in every case.  (Resp. [167]

at 16.)  As the Government observes, the only dispositive inquiry is whether the proscribed

conduct poses a risk similar to that posed by the listed generic felonies.  *Sykes*, 131 S. Ct. at

2275.  The *Begay* Court asked whether driving under the influence involves "purposeful, violent,

and aggressive" conduct only because it is a strict liability offense, while the generic felonies all

rest on a mens rea of intent.  *Id.* at 2275–76.  Accordingly, there is no need to determine

whether "intentional crimes" involve "purposeful, violent, and aggressive" conduct. *Spencer*, 724 F.3d at 1139.  The Government argues that counsel could not have rendered deficient performance in failing to argue that unlawful use of a weapon, an intentional crime, fulfills all three adjectives.  (Resp. [167] at 16–17.)

Though the Government correctly characterizes the current state of the law, its arguments rest on developments in the case law after Mr. Jones's sentencing.  The Supreme Court decided *Sykes* in 2011, and the Ninth Circuit's opinion in *Spencer* issued in 2013.  Before *Sykes*, the Ninth Circuit applied *Begay* as if the phrase "purposeful, violent, and aggressive" were a dispositive test with three conjunctive elements, even when analyzing intentional crimes.  *See Christensen*, 559 F.3d at 1095 ("Because the Court in *Begay* used the conjunction 'and,' all three of its criteria—'purposeful, violent, and aggressive'—must be satisfied."); *Crews*, 621 F.3d at 855 (applying the "purposeful, violent, and aggressive" formulation to the intentional crime of second-degree assault).  As of Mr. Jones's sentencing hearing, then, if unlawful use of a weapon involved conduct that was not purposeful, not violent, or not aggressive, I would have been compelled to find that it is not a violent felony under the ACCA's residual clause.

Nonetheless, unlawful use of a weapon wears the three adjectives comfortably.  As the Government observes, aiming and discharging a weapon at a building, structure, vehicle, or person is a purposeful act.  Unleashing deadly force in the direction of any of the first three objects demonstrates at least indifference to the risk that it might be occupied, and is therefore a violent and aggressive action.  Firing directly on a person is more so.  Under the Ninth Circuit's pre-*Sykes* understanding of the residual clause, all three *Begay* "elements" are satisfied, and unlawful use of a weapon is a violent felony.

Even under the residual clause's current interpretation, unlawful use of a weapon

qualifies as a violent felony.  As noted above, courts compare the state offense to "its closest analog among the enumerated offenses" to determine whether it poses a similar kind of risk. *Chandler*, 743 F.3d at 651 (quoting *James*, 550 U.S. at 203).  Like burglary and arson, unlawful use of a weapon demonstrates willingness to act in the face of great risk of serious harm.  A burglar will not face violent resistance every time he climbs through a window, but his willingness to take the chance of a violent confrontation imbues every burglary with a serious potential risk of harm.  Nor will an arsonist injure or kill a human victim every time he sets fire to a building, but each drop of a match demonstrates his indifference to the risk of doing so. Likewise, not every bullet or arrow set loose in the direction of a city building will find a human target inside, but the human density of an urban environment ensures that every shot carries an unacceptable risk.  Unlawful use of a weapon in virtually every case carries a risk similar in kind and degree to that posed by burglary and arson, and therefore is a violent felony.

Because Oregon's offense of unlawful use of a weapon qualifies as a violent felony under the law as it presently exists and as it existed in 2008, counsel's failure to argue otherwise cannot have prejudiced Mr. Jones either at sentencing or on appeal.

## II.    <u>Actual Innocence of Being an Armed Career Criminal</u>

Section 2255 empowers a prisoner to challenge his sentence on the ground that it "was imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255.  Mr. Jones argues that his sentence was imposed in violation of U.S. law because it rests on the conclusion that unlawful use of a weapon is a violent felony.  (Mem. in Supp. [165] at 14.)

Nonconstitutional errors may not be raised for the first time in a § 2255 motion if the petitioner could have asserted them on direct appeal.  *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976); *Davis v. United States*, 417 U.S. 333, 345 & n.15 (1974).  Here, nothing prevented Mr.

Jones's counsel from arguing that unlawful use of a weapon is not a violent felony in his direct appeal.  Mr. Jones is therefore barred from raising it now.

Even if Mr. Jones were not barred from asserting his innocence of being an armed career criminal in a collateral attack, the attempt would fail.  For the reasons explained above, Mr. Jones's conviction of unlawful use of a weapon qualifies as a violent felony conviction under the law as it existed at the time of his sentencing.

## III.    <u>Evidentiary Hearing</u>

A § 2255 petitioner is entitled to a hearing on his claim "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  The Ninth Circuit "[has] characterized this standard as requiring an evidentiary hearing where 'the movant has made specific factual allegations that, if true, state a claim on which relief could be granted.'"  *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)).  Accordingly, a hearing must be granted "unless the movant's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Schaflander*, 743 F.2d at 717.  "'Merely conclusory statements in a § 2255 motion are not enough to require a hearing.'"  *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993) (quoting *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980)).

The Government correctly observes that Mr. Jones's motion presents a pure issue of law requiring no resolution of factual questions.  (Resp. [167] at 23–24.)  Because unlawful use of a weapon is a violent felony under the law as it existed at the time of sentencing, Mr. Jones's motion does state a claim on which relief may be granted.  No evidentiary hearing is warranted.

**IV.**    **Motion To File a Third Amended Motion Under 28 U.S.C. § 2255**

Mr. Jones moves [174] for leave to amend his § 2255 motion to assert against his trial

counsel a second claim of ineffective assistance.  He hopes to accuse counsel of failing to note

that the plea bargain attending one of his convictions for unlawful use of a weapon provided that

the conviction "would be vacated by the state court if the federal government sought to use it as a

predicate conviction for purposes of the ACCA."  (Mot. [174 at 1.)  Because I find that the

amendment Mr. Jones seeks would be futile, I deny leave to amend.

Rule 15 of the Federal Rules of Civil Procedure permits courts to grant a party leave to

amend its pleading at any time, and encourages them to do so "freely" if "justice so requires."

Fed. R. Civ. P. 15(a)(2).[2]  In determining whether to grant leave to amend under Rule 15, courts

consider such factors as "bad faith, undue delay, prejudice to the opposing party, futility of the

amendment, and whether the party has previously amended his pleadings."  *Bonin v. Calderon*,

59 F.3d 815, 845 (9th Cir. 1995).  Futility alone may be grounds for denying leave to amend.  *Id.*

Mr. Jones argues that his trial counsel rendered deficient performance in failing to have

the Oregon state court vacate his November 1994 conviction pursuant to the plea agreement.  He

also argues that this omission caused him prejudice, in the form of a longer sentence than he

otherwise would have received.  (Mem. in Supp. [175] at 5.)  He concedes that vacating the

conviction would not have affected his armed career criminal status because three other predicate

convictions would remain.  *Id.*  He argues nonetheless that vacation of the conviction might have

led to a lower criminal history category, or even a lower sentence within the applicable

Guidelines range.  *Id.*; Reply [181] at 5.

**A.**    ***Amendment To Allege Deficient Performance Would Not Be Futile***

---

[2] Courts may apply the Federal Rules of Civil Procedure in hearing a § 2255 motion "to the extent that they are not
inconsistent with any statutory provisions" or the Rules Governing § 2255 Proceedings.  R. Gov. § 2255 Proc. 12.

The Government asserts that trial counsel's failure to seek vacation of the November 1994 conviction was not deficient performance because a state court cannot "change a defendant's federal sentence by issuing a ruling that alters history and the underlying facts." (Resp. [179] at 8 (quoting *United States v. Yepez*, 704 F.3d 1087, 1091 (9th Cir. 2012) (en banc)).)  In *Yepez*, two defendants were arrested as they attempted to carry methamphetamines from Mexico into the United States.  *Id.* at 1089.  At the time of his arrest, each defendant was serving a term of probation for a state offense.  *Id.*  When they were charged in federal court with crimes carrying a mandatory minimum sentence, in order to qualify for the "safety valve" exception,[3] both men persuaded the relevant state courts to terminate their probationary periods nunc pro tunc as of the day before their arrest.  *Id.* at 1089.

The Ninth Circuit held that the state courts' retroactive termination of the defendants' probation could not negate its effect on their eligibility for the safety valve.  *Id.* at 1091.  That the defendants had the status of probationers when they committed the federal offense was a "historical fact," one that the state court could not alter by fiat.  *Id.* at 1090.  To hold otherwise would be to ignore the Sentencing Guidelines, which exclude convictions that were "ruled constitutionally invalid or that have been reversed or vacated due to errors of law or the defendant's innocence," but not convictions that were retroactively altered in order to defeat federal consequences.  *Id.* at 1090–91 (citing U.S. Sentencing Guidelines Manual § 4A1.2 cmt. n.6).  Accordingly, the Ninth Circuit concluded that the safety valve was inapplicable despite the state courts' retroactive revocation of the defendants' probation status.  *Id.* at 1091.

The en banc court departed from the conclusion of the three-judge panel that heard the appeal initially, which had determined that comity required the district court to recognize the

---

[3] The "safety valve" provision of the federal sentencing scheme blocks application of a statutory mandatory minimum sentence to low-level offenders who meet certain requirements.  18 U.S.C. § 3553(f); *United States v. Shrestha*, 86 F.3d 935, 938 (9th Cir. 1996).

state court's retroactive termination of the defendants' probation. *Id.* The en banc court

reasoned that allowing a state court to undermine application of federal sentencing provisions "is

closer to abdication than comity." *Id.* Instead, "[i]n our American system of dual sovereignty,

each sovereign—whether the Federal Government or a State—is responsible for the

administration of its own criminal justice system." *Id.* (quoting *Setser v. U.S.*, 132 S. Ct. 1463,

1471 (2012)). A later three-judge panel reaffirmed that state courts may not interfere in federal

sentencing by retroactively altering a defendant's status after commission of a federal offense.

*United States v. Lizarraga-Carrizales*, --- F.3d ----, No. 10-50148, 2014 WL 2958614, at *4 (9th

Cir. July 2, 2014).

     The Government argues that *Yepez* forecloses any argument that Mr. Jones's trial counsel

rendered ineffective assistance in failing to have the 1994 conviction vacated. (Resp. [179] at 8–

9.) Because counsel's attempt to vacate the conviction would necessarily be after Mr. Jones was

arrested for possessing a firearm while a felon, vacation could not alter the "historical fact" that

Mr. Jones had been convicted of unlawful use of a weapon when he committed the federal

offense. *Id.* at 8. The Government argues accordingly that Mr. Jones can show no prejudice

from trial counsel's omission. *Id.* The Government also observes that Mr. Jones has not shown

that the 1994 conviction was ever vacated for an error of law, evidence of actual innocence, or a

constitutional deprivation. *Id.* at 9.

     Again, the Government correctly summarizes the current state of the law, but fails to

check its summary against the law in effect at the time of sentencing. The earliest Ninth Circuit

opinion the Government cites for the notion that state courts cannot retroactively alter a

defendant's status to defeat federal consequences was issued in 2009. (*See* Resp. [179] at 5

(citing *United States v. Alba-Flores*, 577 F.3d 1104 (9th Cir. 2009)).) Mr. Jones's sentencing

hearing took place in 2008.  The Government has pointed to no authority in existence at that time that would have compelled me to include Mr. Jones's November 1994 conviction in his criminal history calculation had trial counsel succeeded in having it vacated.  Accordingly, I cannot find that any effort to have the November 1994 conviction excluded at sentencing would necessarily have failed.[4]

### B.    *Amendment To Allege Prejudice Would Be Futile*

Thirteen or more criminal history points results in a criminal history category of VI.  U.S. Sentencing Guidelines Manual § 5A.  The presentence report summed up Mr. Jones's criminal history points at seventeen, and assigned three points to his 1994 conviction.  (Present. Report ¶¶ 35, 41.)  I adopted the report during the sentencing hearing.  (Sent. Tr. [129] at 90:24–25.)  If Mr. Jones's 1994 conviction were not taken into account, then, he would have fourteen criminal history points, and his criminal history category would remain VI.  (Resp. [179] at 10.)  Vacating the conviction therefore would not have affected Mr. Jones's applicable Guidelines range.

Nor would vacation of the November 1994 conviction have caused me to select a lower Guidelines sentence.  Mr. Jones's "troublingly violent" history played a central role in my sentencing decision.  (Sent. Tr. [129] at 93:4–94:5.)  That history includes an unprovoked drive-by shooting at rival gang members as they sat on a porch, a second shooting at a gang rival in a residential neighborhood, an unprovoked attack on a man Mr. Jones had met earlier at a nightclub, and the trailer shooting underlying the November 1994 conviction.  (Presentence

---

[4] Mr. Jones also argues that the Due Process Clause requires the Court to honor the State of Oregon's agreement to have his November 1994 conviction vacated.  (Reply [181] at 2–3.)  "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *Santobello v. New York*, 404 U.S. 257, 262 (1971).  In fact, the state must honor the terms of a plea bargain even if doing so would result in a sentence that is illegal under state law.  *See Buckley v. Terhune*, 441 F.3d 688, 699–700 (9th Cir. 2006) (ordering reduction of a habeas corpus petitioner's prison sentence to fifteen years, the term the state agreed to recommend, though California law does not provide for such a sentence for the crime of conviction).  This obligation, however, extends only to the prosecution in the state court proceeding.  Due process does not require this Court to ignore the historical reality that Mr. Jones stood convicted of unlawful use of a weapon as of August 8, 2005, the date recited in the indictment.

Report ¶ 32–35; Sent. Tr. [129] at 93:18–19.)  Even if one chapter were deleted from the tale, those remaining would still reveal a "young man willing to shoot over nothing."  (Sent. Tr. [129] at 93:22.)  In that event, I would likely reach the same conclusion—that a relatively lengthy sentence is necessary to prevent future armed incidents.  (Sent. [129] at 94:2–5.)  Mr. Jones has not persuaded me that, if his November 1994 conviction were erased from history, a reasonable probability exists that he would have received a lower sentence than he did.

Because any effort to amend Mr. Jones's § 2255 motion to allege trial counsel's failure to have his November 1994 conviction vacated resulted in prejudice would be futile, leave to amend is denied.

## CONCLUSION

Mr. Jones's Amended Motion To Vacate Sentence Pursuant to 28 U.S.C. § 2255 [158] is DENIED.  A certificate of appealability is DENIED because Mr. Jones has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Mr. Jones's Motion To File Third Amended Motion Under 28 U.S.C. § 2255 [174] is DENIED.

IT IS SO ORDERED.

DATED this ___4th___ day of August, 2014.


                                                   /s/Michael W. Mosman
                                                   MICHAEL W. MOSMAN
                                                   United States District Judge